# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **IN THE MATTER OF:** | |
| MICHEL OMAR COLLAZO GONZALEZ | CASE NO: 22-02360 **(EAG)** |
| Debtor | CHAPTER 13 |
| **FIRSTBANK Puerto Rico** <br> Movant | (x) an action against the estate under 11 USC §1325(a)(1), 11 USC §1325 (a)(3), 11 USC §1325 |
| MICHEL OMAR COLLAZO GONZALEZ <br> Jose Carrión Morales <br> Respondents | (a) (6), and (9) & 11 USC §1325 (b) (1) (B), and (b)(4). |

## MOTION OBJECTING PLAN CONFIRMATION

TO THE HONORABLE COURT:

Comes now **FIRSTBANK Puerto Rico** through its undersigned counsel and respectfully alleges and prays:

**I. JURISDICTION.**

1- That this Honorable Court has jurisdiction under 28 USC §1334, 28 USC §1408, 11 USC §1325(b) (1) (B) on Disposable Income Test or Best-Effort and 11 USC §1325 (b) (4) on Commitment Period, and Local Bankr. R. 3015(b), Bankr. Rule 7004, C. Proc. R. 5(b) and 6 See Lundin, Keith M.; on Chapter 13 Bankruptcy: Chapter 5, at §5.33 on Disposable Income.

**II. FACTS.**

2- Debtor(s) filed a petition under Chapter 13 of the Bankruptcy Code on August 14, 2022. And on August 25,2022, Movant filed an unsecured claim to an auto – deficiency for $21,627.63. See, Clm 3.

3- Debtor(s) proposed Chapter 13 Plan dated August 14, 2022, with a total base of $30,000.00, appears not to be ready for confirmation. See, Dck 6 and 27. This is so as it appears that: [a] debtor's proposed plan is insufficient to pay the claims as filed. None compliance with this requirement hinges confirmation under 11 USC 1325 (a) (6). [b] Nevertheless, on the other hand debtor needs to (i) file schedules I and J, and (ii) debtor needs to disclosed his consensual spouse income. None compliance with these requirements hinges confirmation under 11 USC 1325 (a) (6). [c] Also the

debtor needs to evidence compliance with tax reports for the years 2018 to 2021. None compliance with this requirement may hinge confirmation under 11 USC 1325 (a) (9). <u>See</u>, Dck 6 and 17; and Attachment A.

**III. APPLICABLE LAW.**

Bankruptcy L Rule 9013-2 (a) specifically provides that except as provided in subsection (b) of this LBR, any motion or response thereto must be accompanied by supporting memorandum that contains the points and authorities in support of the party's position, together with any affidavits or documents in support thereof.

5- Title 11 USC §1325 (a) lists an example of nine standards which always apply. The additional standards in subsection Sections (b) only applies if there is an objection to confirmation of the plan. <u>Legislative History of Section 1325</u>.

6- In that line a bankruptcy court must confirm a plan if: (1) the plan satisfies the provisions of the chapter 13 and other applicable provisions of Title 11; such as (2) it is proposed in good faith; (3) the plan is sufficiently funded; (4) the debtor will be able to make all payments under the plan and to comply with the plan (feasibility); … (b) (1) and (4) debtor will paid all his disposable income under the plan during the commitment period.

7- Title 11 USC §1325 on confirmation provides that:

(a) Except as provided under subsection (b), the court shall confirm a plan if –

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title; …

(6) the debtor will be able to make all payments under the plan and comply with the plan; …

(9) the debtor have filed the applicable Federal, State, and Local tax returns as required under section 1308.

8- Section 1325 (a) (6) of the code calls for evidence that: ... (4) the debtor will be able to make all payments under the plan and to comply with the plan. Feasibility, although an ample concept at its simplest requires that the debtor's income exceeded expenses by an amount sufficient to make the payments proposed under the plan. Where the debtor's budget will not support the payments into the plan, the plan is not feasible and confirmation must be refused. In Re Belden, 144 BR 1010 (Bkcy. D. Minn. 1992)

9- Furthermore, to qualify for confirmation under Chapter 13, Debtor has to satisfy the requirements set forth in 11 USC §1325(a) (3) of the Code. Therefore, a Plan's must be filed in good faith.

10- In evaluating whether a plan has been proposed in good faith under 11 USC §1325[a][3], the bankruptcy court should look to the totally of the circumstances, including: [1] the amount of the debtor's income from all sources, [2] the living expenses of the debtor and dependents, [3] amount of attorney's fees, [4] the probable expected duration of the debtor's plan, [4] the probable or expected duration of the debtor's plan, [5] the debtor's motivations and sincerity seeking chapter 13, [6] the debtor's degree of effort, [7] the debtor's ability to earn and the likelihood of fluctuation in earnings, [8] the special circumstances such as inordinate medical expenses, [9] the frequency with which the debtor has sought bankruptcy relief, [10] the circumstances under which the debtor has contracted debts and demonstrate bona fide, or lack of the same, in dealings with creditors, and [11] the burden which the plan's administration would place on the trustee. In re Young, 237 F.3d 2268 [10th Cir. 2001], Matter of Love, 957 F2nd. 1350 [7th Cir. 1992]

11- After the enactment of BACPA 2005 the "good faith" of a chapter 13 debtor will now be subject to examination at two different instances in the confirmation process. 11 U.S.C. §1325 (a) (3) requires that the court find that "the plan has been proposed in good faith and not by any means forbidden by law." BAPCPA amends 11 U.S.C. §1325(a) by adding new subsection (7), which provides that confirmation of a plan is also dependent upon whether "the

action of the debtor in filing the petition was in good faith." Objecting creditors now have two "good faith" arguments available.

12- "Good faith" is not defined in either the Bankruptcy Code or in BAPCPA. "Good faith" is defined in *Black's Law Dictionary* (8th Edition, 2004) as "a state of mind consisting in (1) honesty in belief or purpose... (4) absence of intent to defraud or to seek unconscionable advantage." Most circuits have looked to the "totality of the facts and circumstances." In re Smith, 2005 WL 2030520 (Bankr. W.D. Mo. 2005), and In re Henry, 2004 WL 3485494 (Bankr. S.D. Ohio 2004), are the most recent cases articulating the approaches in the Sixth and Eighth Circuits. In order to define and develop the concept of "good faith," those various circuits outlined factors to be examined in order to properly apply a good-faith standard. Some of those factors include motivation and sincerity of the debtor, whether there were inaccuracies in the plan that would mislead the court, the extent of preferential treatment, etc.; more than a dozen factors are discussed in these cases.[1] But these cases relate to whether the debtor proposes the plan in good faith. One can argue that some of those standards apply to the filing of the petition.

13- Also, section 1325 (a) (9) calls for the debtor to evidence that he, she or them have filed the applicable Federal, State, and Local tax returns as required under section 1308. Moreover, section 1308 of the Code is even more specific; although, it gives certain flexibility to the chapter 13 in the sense that it provides:

> **(a)** Not later than the day before the date on which the meeting of the creditors is first scheduled to be held under section 341(a), if the debtor was required to file a tax return under applicable nonbankruptcy law, the debtor shall file with appropriate tax authorities all tax returns for all taxable periods ending during the 4-year period ending on the date of the filing of the petition.
> **(b) (1)** Subject to paragraph (2), if the tax returns required by subsection (a) have not been filed by the date on which the meeting of creditors is first scheduled to be held under section 341(a), the trustee may hold open that meeting for a reasonable period of time to allow the debtor an additional period of time to file any unfiled

---

[1] In re Estus, 695 F2d 311 (8th Cir. 1982)

4

<u>returns</u>, but such additional period of time shall not extend beyond—
...

14 - In that line debtor must comply with the provide either to the chapter 7 or chapter 13 all the documents required under 11 USC 521 of the Code. This is so as the filing for bankruptcy involves providing all financial information and verifying it with supporting documents. Among them, the debtor must provide six months of payment stubs prior to confirmation, the bank statements, retirement, pension, and investment account statements, profit and loss statements [where the debtor own a business], proof of the value of the properties of the state, even divorce decrees, were applicable, and copies of the Federal, State tax returns, personal tax returns and business tax returns, W-2's and 1099's, as well (where applicable).

15- The chapter 13 trustee needs to review the tax returns to determine if debtor owe any taxes. After BAPCPA 2005 the bankruptcy legislation essentially eliminated what had been known as the "super discharge" by reducing the types of debts that can be discharged without being paid in the chapter 13 proceeding. This revision in combination with the pre-2005 rules that required full payment obligations entitled to priority resulted in that the debt relief that a taxpayer can accomplish by a chapter 13 petition is limited. Thus, to accomplished confirmation the debtor must provide for the full payment of priority claims. Priority claims include income and gross receipts taxes for which a return is last due within three years of the filing by the bankruptcy petition. <u>See</u>, 11 USC §1328, Resnick and Sommer, Collier on Bankruptcy at ¶TX1.08[12]. <u>Also see</u>, The Demise of the34 Chapter 13 Super Discharge? 13-5 at American Bankruptcy Institute Journal 16 (June 1994). See as well, 11 USC §507(a)(8)(A)(i) and for a general discussion of priority tax claims, <u>see</u> Salzman and Hibschweiler, on "<u>Timing Considerations of Discharging Tax in a Chapter 7 Bankruptcy</u>" (/issue/2012/feb/salzman-feb2012.html).

16- Also income taxes assessed within 240 days before the filing for relief are also entitled to priority, meaning that they must be paid in full, as well. In that line, taxes property taxes due before the petition and last payable without penalty within one (1) year before the bankruptcy petition

and certain employment taxes on pre-petition wages reported on a return due within three years of the petition are entitled to priority. Nevertheless, the IRS has a right only to full payment of the priority tax claims over the life of the plan. <u>This means that chapter 13 debtor need not pay priority claims in equal monthly payments</u>. 11 USC §507(a)(8)(A)(i), 11 USC §507(a)(8)(B), and 11 USC §507(a)(8)(D).

17- As well, pre- petition interest debts are Generally given the same priority as the underlying tax claim. Meaning that the government will be entitled to post- petition interest where tax debt is oversecured. In other words, if the value of the collateral exceeds the amount of taxes owed. In That line its important to take notice that a tax claim is secured if a notice of federal tax lien has been filed before the petitions filing date. See, In re Larson, 862 F2d 112 (7th Cir. 1988), and 11 USC §506(b). <u>See</u>, Salzman and Hibschweiler, on "<u>Timing Considerations of Discharging Tax in a Chapter 7 Bankruptcy</u>" (/issue/2012/feb/salzman-feb2012.html), at page 106. For more on Notices of Federal Tax Liens. Nevertheless, federal tax liens may be challenge. To that effect <u>see</u>, 11 USC §547.

18- All the above mentioned documents allowed the chapter 7 or chapter 13 trustee the gather and/or corroborate information on debtor's income and expenses, losses and reduction in income, transfers of property and ownership of business interests. None compliance with this requirement may even result in the dismissal of the case. <u>See</u>, 15-3271 [MAW] <u>In re Claude Darus Lundy and Chanda Marie Lundy</u>, (1917); <u>See</u>, 09-50009 [RS] <u>In Re Clarence Broussard and Shannon Broussard</u> quoting <u>In re French</u>, 354 BR 258 (Bkcy E.D. Wisc. 2006); <u>In re Cluney</u>, 06-21175, 2007 WL 2219112 (Bkcy E.D. Kan. June 22, 2007); <u>In re Cushing</u>, 401 BR 528 (1st Cir. BAP 2009).

19- Likewise, in applying the good-faith requirement of 11 U.S.C. §1129(a) (3), the courts have looked to the totality of the circumstances. The Seventh Circuit in, <u>In re Madison Hotel Associates</u>, 749 F.2d 410, 415 (7th Cir. 1984), defined good faith to include "a reasonable likelihood that plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code."

6

20- On the contrary, improper purpose defines Bad Faith. To that effect, under 11 U.S.C. §303 (i) (2), the court can enter judgment against a petitioning creditor who acts in "bad faith." In the latter instance, the legislative history talks about "frivolous...and spiteful petitions..."[2] "Bad faith" is not defined in the Bankruptcy Code. A "bad-faith filing" is defined in *Black's Law Dictionary* as "the act of submitting a bankruptcy petition that is inconsistent with the purpose of the Bankruptcy Code or is an abuse of the bankruptcy system (*i.e.*, not having filed in good faith)."

21- The applicable case law is more expansive.[3] If one presumes that "bad faith" evidences a lack of good faith, this case law is instructive in suggesting several tests that can be applied. The "improper use" test looks to whether or not the petitioning creditor sought to obtain a disproportionate advantage.[4] The "improper purpose" test finds bad faith if the filing of the petition was motivated by factors such as ill will, malice or an intent to harass or embarrass.[5] There are additional tests based on a reasonable-person standard or a Rule 9011 standard.[6]

22- These tests may be applied to aid the court in determining whether or not the chapter 13 debtor filed the petition in "bad faith" or did not evidence "good faith," yet one must be mindful that 11 U.S.C. §303(i)(2) relates to an award of damages and not a denial of confirmation.

23- On the other hand, the concept of what is presumptively not good faith was introduced by BAPCPA. To that effect, BAPCPA added 11 U.S.C. §362(c)(3)(c), which discusses the effect of prior filings. There is a presumption of "not in good faith" filing if the prior case was dismissed because the debtor failed to file the proper documents, comply with court orders or pay adequate protection assuming no change in the debtor's circumstances. BAPCPA also added 11 U.S.C. §362-(c)(4)(D) to address serial filing of three cases. The same presumption of filing "not in good faith" applies to the third filing. Creditors will benefit from the presumption in

---

[2] 130 Cong. Rec. H 7482 (June 29, 1984)
[3] In re Bayshore Wireless Products Corp., 209 F3d 100 (2d Cir. 2000)
[4] In re K.P. Enter, 135 BR 179 (Bkcy D. Me. 1992)
[5] In re Camelot Inc., 25 BR 864 (Bkcy E.D. 1982)
[6] In re Wavelength Inc., 61 B.R. 614, 620 (9th Cir. BAP 1986) See, the discussion

objecting to confirmation in cases filed under the factual circumstances set out in these amendments.

24- There is no legislative history to help counsel and the courts. The plain meaning of "good faith" and "bad faith" are defined in terms consistent with bankruptcy case law. The amendment effected by 11 U.S.C. §1325(a)(7) was no doubt intended by the credit industry supporters of BAPCPA to give creditors another tool to prevent bankruptcy abuse. The resulting litigation will lead to standards and tests developed by the courts. Creditors will utilize 11 U.S.C. §362(c) amendments to deny confirmation. The results are likely to be consistent with case law developed under 11 U.S.C. §§1325(a)(3), 303(i)(2) and 1129(a)(3).

25- In 1984 Congress added §1325(b) to the Code, best known as the "disposable income test". This section prohibits the bankruptcy court form confirming a Chapter 13 plan over the objection of the Trustee or the holder of an allowed unsecured claim unless one of two conditions are met: (1) "the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim", or (2) "the plan provides that all the debtor(s) projected disposable income to be receive in the three (3) years period beginning on the date of the first payment is due under the plan will be applied to make payments under the plan. Id. Lundin, Keith M., pg. 5-89 Thereafter, with the adoption of the Bankruptcy Abuse Prevention and Protection Consumer Act of 2005 (BAPCPA 2005) in addition to Schedules I and J a Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income must be completed by every individual Chapter 13 debtor.

26- Section 1325(b)(1)(A) restrains the Court from confirming upon an objection unless the Debtor(s) make their "best-effort" under the plan. Id. Lundin Keith M. pg. 5-161

27- Although, not defined under the amended 11 USC §101 of the Code, for eligibility purposes "income" has been broadly interpreted to include wages, salary, commissions, assistance payments, benefits programs, entitlements programs, pensions, receipts from the sale of crops. As well,

8

the courts has held that the liquidation of a personal injury cause of action subsequent to the filing of the Chapter 13 bankruptcy case would constituted projected disposable income for purposes of §1325(b). On the equity on the liquidation of a property please refer to Id. Pg. 5-95

28- Under BAPCA 2005 the amendments to 11 USC §1325 (b) (1) (A) requires that the disposable income dedicated to the plan must be paid to unsecured creditors. The former 11 USC §1325 (b) (2), defining disposable income, was struck and in its place inserted:…(2) for purposes of this subsection, the term "disposable income" was defined to mean current monthly income received by the debtor (other than child support payments, foster car payments, or disability payments for a dependent child made in accordance with applicable non- bankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to expended - …

29- Current with this change, 11 USC §1325 (b) (4) was amended to substitute "applicable commitment period" for the "three – year period" in the term "applicable commitment period", and as defined in a new subsection (4), again measuring the debtor's current monthly income against median income and using the same language as seen in 11 USC §1322(d), the term "commitment period" id defined as:

> **(4)** For purposes of this subsection, the "applicable commitment period"—
> **(A)** subject to subparagraph (B), shall be—
> **(i)** 3 years; or
> **(ii)** not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than—
> **(I)** in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
> **(II)** in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
> **(III)** in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4; and

9

        **(B)** may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured <u>claims</u> over a shorter period.

30- Under 11 USC §1325 (b) (4) the Code, *as amended*, provides the guidelines for what will constitute the "applicable commitment period".

## IV. PLEA.

31- In this case debtor filed a petition under Chapter 13 of the Bankruptcy Code on August 14, 2022. And on August 25,2022, Movant filed an unsecured claim to an auto – deficiency for $21,627.63. <u>See</u>, Clm 3.

32- Debtor(s) proposed Chapter 13 Plan dated August 14, 2022, with a total base of $30,000.00, appears not to be ready for confirmation. <u>See</u>, Dck 6 and 27. This is so as it appears that: [a] debtor's proposed plan is insufficient to pay the claims as filed. None compliance with this requirement hinges confirmation under 11 USC 1325 (a) (6). [b] Nevertheless, on the other hand debtor needs to (i) file schedules I and J, and (ii) debtor needs to disclosed his consensual spouse income. None compliance with these requirements hinges confirmation under 11 USC 1325 (a) (6). [c] Also the debtor needs to evidence compliance with tax reports for the years 2018 to 2021. None compliance with this requirement may hinge confirmation under 11 USC 1325 (a) (9). <u>See</u>, Dck 6 and 17; and Attachment A.

33- The debtor needs to evidence compliance with his obligations under the obligations 11 USC 1325 (a)(1), 11 USC §1325(a)(3) on good faith, 11 USC 1325 (a) (4) on liquidation value, 1325 (a)(6) on feasibility, 11 USC 1325 (b)(1) (B) & (b) (4) on disposable income test. This is so, as none compliance with the above-mentioned sections of the code may hinge confirmation.

34- For the reasons stated here-in-before Movant does not accept the plan.

**WHEREFORE,** FIRSTBANK Puerto Rico respectfully requests from this Honorable Court to denied Debtor's plan confirmation, or order the amendment of the proposed plan to comply with the Disposable Income Test.

**RESPONSE TIME NOTICE**

Within fourteen (14) days after service as evidenced by the certification, and additional three (3) days pursuant to Fed. R. Bankr. P. 9006 (f) if you were served by mail, any party against whom this paper has been served, or any party to the action who objects to the relief sought herein, shall serve, and file an objection or other appropriate response to this paper with the Clerk's Office Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the Court, the interest of justice requires otherwise.

**Rule 9013-1 (h)**

**CERTIFICATE OF SERVICE**

I hereby certify that on this same date a true and correct copy of the present motion was sent by the CM/ECF System of the Bankruptcy Court House to: - Chapter 13 Trustee Atty. José Carrión Morales, //Atty. Alejandro Oliveras Rivera; - to the Attorney for the Debtor's LISSETTE A MORALES VIDAL; to the list of Creditors; and to the Debtor(s) by regular mail at the address on record, MICHEL OMAR COLLAZO GONZALEZ, at 4304 DOGWOOD TERRACE, BURTONSVILLE, MONTGOMERY, MD 20866.

In San Juan, Puerto Rico this the 7th day of October 2022

BY: /s/ María M. Benabe Rivera
María M. Benabe Rivera
Attorney for Movant - US - DC 208906
Maricarmen Colón Díaz - US - DC 211410
FIRSTBANK Puerto Rico
Centro de Servicios al Consumidor - Código 248
1130 Muñoz Rivera Ave., Rio Piedras, P R
PO Box 9146, San Juan, PR 00908-0146
maria.benabe@firstbankpr.com
(787)729-8135 / (787)729-8276 [Rev. 10/2022]

26-septiembre-2022

A : LCDA. BENABE

DE : IVELISSE ROMERO ABRAHANTE

ASUNTO: 22-02360 EAG
MICHEL OMAR COLLAZO GONZLAEZ

**CONF. HEARING: 7-OCTUBRE-2022**

**RE:** **INSUFFICIENTLY FUNDED**
**TíTULO 11 USC 1325 (b)**

PLAN: 14-AGOSTO-22        BASE PROPUESTA:        **$30,000.00**

| | | | | |
|---|---|---|---|---|
| PRIORITY | IRS | | $7,924.80 | CLAIM 1 |
| PRIORITY | ASUME-VIRMARILIS FLORES | $ | 20,316.65 | CLAIM 5 |
| PRIORITY | ASUME-JESSICA CARATINI | $ | 15,511.30 | CLAIM 4 |
| ARREARS | | | | |
| SEGURO | | $ | - | |
| Val. Collateral | | $ | - | |
| PRIORITY | | | $0.00 | |
| SECURED | | | $0.00 | |
| CO-DEBTOR | | | $0.00 | |
| ATTY. FEE: | | $ | 3,500.00 | RADICADO |
| Val. Collateral | | | | |
| **SUB-TOTAL** | | $ | 47,252.75 | |
| TRUSTEE FEE | | $ | 3,000.00 | |
| **TOTAL** | | $ | 50,252.75 | |
| | **SE QUEDA CORTO POR:** | $ | (20,252.75) | |

**SE ANEJA MINUTA; DOCKET CLAIMS; DOCKET REGISTER.**

*Attachment A*